1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | TERI L. LYNN,                      CASE NO. 08cv0022 BTM (CAB)

12 |                        Plaintiff,   **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

13 |         vs.

14 | MICHAEL J. ASTRUE,

15 |                        Defendant.

16      Plaintiff and Defendant have filed cross-motions for summary judgment.  For the

17 reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion

18 for Summary Judgment and **GRANTS in part** and **DENIES in part** Defendant's Motion for

19 Summary Judgment.

20

21                              I. <u>BACKGROUND</u>

22      Plaintiff Teri L. Lynn ("Plaintiff" or "Lynn") was born on July 27, 1969.  She alleges that

23 she became disabled on November 2, 2004 due to severe migraines, vertigo, and a heart

24 condition.  (Tr. 99.)  Prior to her alleged disability period, Plaintiff held jobs as a customer

25 service representative, sales manager, secretary, and store manager.  (Tr. 100.)

26      On August 23, 2005, Plaintiff Teri L. Lynn ("Plaintiff" or "Lynn") filed an application for

27 disability benefits under Title II of the Social Security Act. On December 7, 2005, the Social

28 Security Administration ("SSA") denied Lynn's application.  (Tr. 39–43.)  On January 22,

1  2006, Lynn filed a request for reconsideration. (Tr. 44.) On May 11, 2006, the SSA again

2  denied Lynn's application. (Tr. 46–50.)

3      On July 9, 2006, Lynn filed a request for a hearing by an administrative law judge. (Tr.

4  51.) Administrative Law Judge Edward D. Steinman (the "ALJ") held a hearing on February

5  6, 2007. (Tr. 284–307.) On March 30, 2007, the ALJ issued a notice of decision denying

6  benefits to Lynn. (Tr. 23–32.) On November 5, 2007, the Appeals Council of the Social

7  Security Administration denied Lynn's request to review the ALJ's determination. (Tr. 4–7.)

8

9      On January 3, 2008, Plaintiff filed a Complaint for Review with this Court.

10

11  ## II. THE ALJ'S FINDINGS AND CONCLUSIONS

12      The ALJ followed the five step process set forth under the Social Security Regulations

13  to determine that Lynn was not disabled. The five steps are as follows: (1) Is the claimant

14  presently working in any substantially gainful activity? If so, then the claimant is not disabled.

15  If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If

16  not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3)

17  Does the impairment "meet or equal" one of a list of specific impairments set forth in

18  Appendix 1 to Subpart P of 20 C.F.R. Part 404? If so, then the claimant is disabled. If not,

19  then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she

20  has done in the past? If so, then the claimant is not disabled. If not, then the evaluation

21  proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant

22  is disabled. If, on the other hand, the Commissioner can establish that there are a significant

23  number of jobs in the national economy that the claimant can do, then the claimant is not

24  disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

25  1999).

26      The ALJ first determined that Plaintiff had not engaged in substantial gainful activity

27  since her alleged onset date of November 2, 2004. (Tr. 28.) Proceeding to step two, the ALJ

28  found severe impairments including migraines, vertigo, and Meniere's disease. (Tr. 28.) At

step three, however, the ALJ held that Lynn's impairments did not "meet or equal" one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28.)  The ALJ relied upon the testimony of the medical expert ("ME") to conclude, at step four, that Lynn had the residual functional capacity to perform work activity without any exertional limitations and occasional postural limitations for balancing and climbing and no climbing ropes, ladders or scaffolds, and avoiding concentrated exposure to noise and vibration, and avoiding all exposure to hazards such as machinery and heights.  (Tr. 31.)  The ALJ found that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (Tr. 31.)  Additionally, the ALJ determined that the letter opinions from Lynn's treating physician, Dr. Hoffer, were inconsistent with his examinations of record, and, therefore, entitled to little weight.  (Tr. 32.)  Finally, the ALJ credited the vocational expert's ("VE") testimony that an individual Plaintiff's age and education level, with similar work experience and residual functional capacity, could perform the duties of Plaintiff's past relevant work activity as a store manager ("Manager, Retail Store" - DOT # 185.167-046), secretary ("Secretary" - DOT # 201.362-030), or general office administrative clerk ("Administrative Clerk" - DOT # 219.362.010).  (Tr. 32.)

## III.  STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence.  Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance.  Id.  Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  The Court must weigh the evidence that supports and detracts from the ALJ's conclusion and, where the evidence tends to support either outcome, the Court cannot substitute its own opinion for that of the ALJ.  Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992); Martin v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

## IV.  DISCUSSION

Plaintiff appeals the ALJ's decision on two grounds.  First, Plaintiff argues that the ALJ's decision must be vacated because the ALJ's finding that Plaintiff could perform her past relevant work activities was based on legal error and not supported by substantial evidence.  Second, Plaintiff contends that the ALJ's rejection of Plaintiff's treating physician's opinion was based on legal error and not supported by substantial evidence.

A.     Plaintiff's Ability to Perform Past Relevant Work Activities

Plaintiff argues that the ALJ's finding that Plaintiff could perform her past relevant work activities was based on legal error because the ALJ failed to ask the VE whether her testimony conflicted with the Dictionary of Occupational Titles ("DOT") and, if so, whether there was a reasonable explanation for the conflict.

Under SSR 00-4p, the ALJ has an affirmative duty to ask about any possible conflict between the VE evidence and information provided in the DOT.  The ALJ must (1) ask the VE if the evidence he or she provided conflicts with information provided in the DOT; and (2) if the VE's evidence appears to conflict with the DOT, obtain a reasonable explanation for the apparent conflict.  A reasonable explanation for a conflict may be based on information that is not included in the DOT – e.g., information obtained directly from employers or other publications about a particular job's requirements or information based on the VE's own experience in job placement or career counseling.  SSR 00-4p.

In Massachi v. Astrue, 486 F.3d 1149 (9th Cir. 2007), the Ninth Circuit held that the ALJ must perform the inquiries under SSR 00-4p before relying on a VE's testimony regarding the requirements of a particular job.  If the ALJ fails to do so despite a potential conflict between the VE's testimony and the DOT, the Court cannot determine whether the ALJ's decision that the plaintiff can perform other work was supported by substantial evidence and, therefore, must remand the case.  Id. at 1154.

To determine whether Plaintiff could perform her past relevant work activities, the ALJ proposed the following hypothetical to the VE: "[N]o exertional limitations.  No ropes, ladders

08cv0022 BTM (CAB)

or scaffolds.  Occasional climbing and balancing.  The rest of the posturals frequent.  *Avoid concentrated exposure to noise*, vibration, and avoid all exposures to hazards." (Tr. 305.) The VE responded that with these limitations, Plaintiff could perform all her former work activities of secretary, store manager, and administrative clerk.  Plaintiff argues that ALJ should have asked the VE whether the limitation of "avoiding concentrated exposure to noise" conflicted with the environmental conditions of Plaintiff's three past relevant work activities, as defined by the DOT.  The DOT indicates that the work activities of a secretary, store manager, and administrative clerk all involve "moderate noise level." See U.S. Department of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. D (1993); (Tr. 143.)  Thus, Plaintiff contends, the ALJ had an affirmative duty to identify and obtain a reasonable explanation between Plaintiff's concentrated noise limitation and the VE's testimony that she could perform work activities with a moderate noise level.

The Government responds, however, that because the VE noted in her "Study Worksheet" (Tr. 142–45) that all three jobs involved a moderate level of noise, she was "fully aware" of these environmental conditions, and necessarily determined that the performance of work activities with a moderate level of noise did not conflict with the need to avoid concentrated noise.  The Court disagrees.

Even if the VE was "fully aware" of the moderate noise level involved with all three positions, her knowledge did not relieve the ALJ of his obligation to identify and obtain an explanation for the apparent conflict.  The record does not define "concentrated" noise or make clear how it differs from a moderate noise level.  While it is possible that an individual required to avoid concentrated noise as a result of her impairments could perform work activities with a moderate level of noise, SSR 00-4p obligated the ALJ to question the VE about this uncertainty.  The ALJ did not ask the VE about the conflict and did not explain how the conflict was resolved in his determination.

The Court finds the case of Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006), to be instructive.  In Prochaska, the plaintiff argued that the jobs identified by the VE required

1   specific physical capabilities that were beyond her limitations.  Although the ALJ asked the

2   expert about work that could be done by someone who could only "occasionally reach above

3   shoulder level," the VE testified that the plaintiff could perform the job of cashier, which,

4   according to the DOT, involves "reaching frequently."   The Seventh Circuit vacated the

5   district court's judgment upholding the Commissioner's decision and remanded the case to

6   the ALJ, explaining:

7           It is not clear to us whether the DOT's requirements include reaching above
            shoulder level, and this is exactly the sort of inconsistency the ALJ should have
8           resolved with the expert's help. We cannot determine, based on the record,
            whether the expert's testimony regarding . . . reaching was actually
9           inconsistent with the DOT. That determination should have been made by the
            ALJ in the first instance, and his failure to do so should have been identified
10          and corrected by the Appeals Council. We will defer to an ALJ's decision if it
            is supported by "substantial evidence," but here there is an unresolved
11          potential inconsistency in the evidence that should have been resolved.

12  Id. at 736.

13          As in Prochaska, here there was a potential inconsistency between the VE's testimony

14  and the DOT.  The Court cannot determine whether "avoiding concentrated noise" actually

15  conflicts with the DOT definition of occupations with a moderate noise level.  The ALJ had

16  an affirmative duty to ask whether there was a conflict and, if so, whether there was a

17  reasonable explanation for it.  Because the ALJ failed to perform the appropriate inquiries

18  under SSR 00-4p, the Court cannot determine whether substantial evidence supports the

19  ALJ's finding that Plaintiff can perform her past relevant work.  Therefore, the Court **GRANTS**

20  Plaintiff's Motion for Summary Judgment insofar as it argues that the ALJ's finding that she

21  could perform her past relevant work activities was based on legal error and not supported

22  by substantial evidence.  The Court **DENIES** Defendant's Motion for Summary Judgment on

23  this issue.

24

25  B.      Rejection of Treating Physician's Opinion

26          Plaintiff's treating physician, Dr. Michael E. Hoffer, submitted two opinion letters on

27  her behalf.  In his first letter, dated September 8, 2006, Dr. Hoffer stated:

28          Ms. Lynn has been a patient of mine for several years.  She has been
            diagnosed with left-sided Meniere's disease and Migraines.   Ms. Lynn

complains of hearing loss and tinnitus at all times.  She has intermittent episodes of vertigo lasting several hours that occur 2–6 times a week.  These are all associated with worse hearing loss and tinnitus.  In addition to these attacks, she has severe headaches which are also associated with vertigo.  She will be totally disabled with both these types of attacks for several hours and than [sic] feel incapacitated for several hours afterwards.  She has failed all medical therapy.  Due to her dizziness, headaches, and hearing loss – she is totally disabled and cannot work.  This disability has been present since December 1, 2004.  (Tr. 275.)

In Dr. Hoffer's second opinion letter, dated February 7, 2007, Dr Hoffer wrote:

I have been treating Ms. Teri Lynn since December of 2004.  Ms. Lynn has debilitating dizziness, hearing loss, and tinnitus.  She initially carried the diagnosis of Migraine Associated Dizziness but after tests revealed the presence of endolymphatic hydrops (extra fluid in the inner ear) she was given the diagnosis of Meniere's disease with migraines.  Her condition is totally disabling and makes it impossible for her to maintain consistent employment due to unpredictable and violent episodes of dizziness and debilitating headaches.

The ALJ rejected Dr. Hoffer's opinion.  The ALJ concluded:

As for the opinion evidence, Dr. Hoffer's letter at Exhibit 12F is rejected as totally inconsistent with examinations of record, including his own examination at Exhibit 11F.  Dr. Hoffer opined that the claimant's condition was "totally disabling" making it "impossible for her to maintain consistent employment."  Dr. Hoffer expresses opinions that concern issues specifically reserved to the Commission, and as such, the undersigned gives little weight to said opinions.  (Tr. 32.)

As a general matter, treating physicians' opinions are given controlling weight when they are supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record.  See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  Where another doctor contradicts a treating physician's opinion, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1990).  In so doing, the ALJ must do more than proffer his own conclusions – he must set forth his own interpretations and why they are superior to that of the treating physician's.  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  The ALJ may meet this burden by conducting a detailed and thorough discussion of the facts and conflicting evidence, and by explaining his interpretations and findings.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Even if a treating physician's opinion is inconsistent with other substantial evidence in the record, it is still entitled to deference and must be weighed using the factors provided

1   in 20 C.F.R. § 404.1527.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); SSR

2   96-2p.  These factors include, inter alia, the "nature and extent of the treatment relationship"

3   between the patient and the treating physician, the "length of the treatment relationship and

4   the frequency of examination," the amount of relevant evidence that supports the opinion and

5   the quality of the explanation provided, and the consistency of the medical opinion with the

6   record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  An ALJ may rely on the absence of

7   objective findings to reject a treating physician's opinion.  See Johnson v. Shalala, 60 F.3d

8   1428, 1432 (9th Cir. 1995).

9       Initially, the Court notes that a treating physician may render an opinion on the

10  ultimate issue of disability.  Reddick, 157 F.3d at 725.  "The administrative law judge is not

11  bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of

12  disability, but he cannot reject them without presenting clear and convincing reasons for

13  doing so."  Id.  Thus, the ALJ's rejection of Dr. Hoffer's opinion simply because it

14  "concern[ed] issues specifically reserved to the Commission," regarding the ultimate issue

15  of disability, was not legitimate.

16      The Court finds, however, that the ALJ otherwise offered clear and convincing reasons

17  for discounting  Dr. Hoffer's opinion.  In his written decision, the ALJ discussed the facts and

18  conflicting evidence.  He described the examinations of Plaintiff conducted by Dr. Hoffer as

19  well as other physicians.

20      The ALJ agreed with the ME's testimony that there was "no organic basis for the

21  claimant's alleged dizziness." (Tr. 31.)[1]  Although Dr. Hoffer's February 7, 2007 letter stated

22  that tests revealed the presence of endolymphatic hydrops (extra fluid in the inner ear), no

23  prior medical records made any mention of this condition.  In addition, the ALJ noted that

24  Plaintiff "has undergone objective testing for vertigo and vestibular ocular reflex (VOR) and

25

26      [1] Furthermore, the ME testified that hearing loss is associated with Meniere's disease.
    and that other than Plaintiff's subjective complaints, no evidence of hearing loss exists in the
27  record.  The ME also testified that Plaintiff should always have nystagmus if she is suffering
    from objective vertigo.  Although nystagmus was induced on a few occasions by head-shake
28  or the Hallpike Maneuver, most of the time, the nystagmus test was negative, even when
    Plaintiff complained of vertigo.  (TR 188, 273.)

08cv0022 BTM (CAB)

the results, as well as the results of all objective examinations, have been negative."

Where a physician relies solely on a patient's subjective complaints and the record shows that the patient lacks credibility, the ALJ may discount the physician's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Additionally, an ALJ may reject the opinion of a treating physician if it is "brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Dr. Hoffer's opinion is brief, conclusory, and appears to be based almost entirely on Plaintiff's subjective complaints. The opinion does not cite any clinical findings as support, perhaps because no such clinical findings exist. Dr. Hoffer's treatment records reflect Plaintiff's complaints but do not set forth objective observations or assessments that corroborate Plaintiff's complaints. Although, at varying times, nystagmus was induced, abnormalities in gait were observed, and Romberg's sign was present, these results do not provide information regarding the severity of Plaintiff's impairment and the extent of her limitations and do not validate Dr. Hoffer's opinion that  Plaintiff is totally disabled. The conclusion that Dr. Hoffer's opinion is primarily based on Plaintiff's subjective complaints is supported by Dr. Hoffer's statements that Plaintiff suffers from hearing loss. Dr. Hoffer's treatment records actually show that upon examination, Plaintiff's ears were normal. (TR 273.)  No abnormal hearing test results were recorded.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were not credible. (TR 31.)  The ALJ found not credible Plaintiff's claim that she suffered from her symptoms 100% of the time. Although Plaintiff complained of vertigo, dizziness, and headaches at some of her examinations, the complaints were not consistent. As explained by the ALJ, "[t]he evidence of record contains several references to examinations where the claimant indicated she experienced no migraines." The record supports the ALJ's statement, as it appears Plaintiff did not complain of migraines or dizziness in her examinations on October 17, 2005 and December 8, 2005. (See Tr. 239–42; Tr. 235.)  The ALJ also explained that Plaintiff lacked credibility because

08cv0022 BTM (CAB)

1   Plaintiff's testimony contradicted itself.[2]  Plaintiff does not challenge the ALJ's credibility
2   finding.  Thus, the ALJ properly discounted Dr. Hoffer's opinion, which rested upon Plaintiff's
3   subjective complaints.

4        Plaintiff argues that even if the ALJ did not accord Dr. Hoffer's opinion controlling
5   weight, he nonetheless failed to consider any of the factors specified in 20 C.F.R. §
6   404.1527(d)(2)–(6).  The Court disagrees.  The ALJ specifically found that Dr. Hoffer's
7   opinion regarding the nature and severity of Plaintiff's impairments was not supported by
8   clinical techniques and conflicted with other evidence in the record.  See  C.F.R. §
9   404.1527(d)(2).  The ALJ also considered the "supportability" and "consistency" of Dr.
10  Hoffer's opinion. See C.F.R. § 404.1527(d)(3)–(4). As already discussed, Dr. Hoffer did not
11  identify clinical evidence in support of his opinion.  Moreover, his opinion was inconsistent
12  with medical examinations showing that Plaintiff did not have hearing loss.  Although the
13  ALJ's opinion could have been more precise, the ALJ sufficiently considered the pertinent
14  factors in determining not to accord Dr. Hoffer's opinion controlling weight.

15       The Court concludes that the ALJ's rejection of Plaintiff's treating physician's opinion
16  was not based on legal error and was supported by substantial evidence.

17

18                              **III.  CONCLUSION**

19       For the reasons explained the above, the Court **GRANTS IN PART** and **DENIES IN**
20  **PART** Plaintiff's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN**
21  **PART** Defendant's Motion for Summary Judgment.  The Court **REMANDS** this case to the
22  Commissioner of Social Security for further proceedings consistent with this opinion.  The

23  ――――――――――――――
24          [2]  In finding the Plaintiff not credible, the ALJ explained:

25       Claimant is not credible as she states she has blackouts and reported her
        symptoms to her doctor, as there is no evidence of such in examinations.
26       Moreover, the claimant testified that she does drive on occasion, and her
        physician has not required that her driver's license be revoked, all of which is
27       inconsistent with the claimant's allegations of blackout experiences.  The
        claimant also stated that she is home schooling her son and claims to spend
28       much of her day with him, which is inconsistent with her testimony that she
        spends 70-80% of her day in a dark bedroom.  (Tr. 31.)

08cv0022 BTM (CAB)

1   Clerk shall enter judgment accordingly.

2

3   **IT IS SO ORDERED.**

4   DATED:  December 8, 2009

5

6   Honorable Barry Ted Moskowitz
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11                                                              08cv0022 BTM (CAB)